In the Matter of Sidney J. Ungar, an Attorney, Respondent. Association of the Bar of the City of New York, Petitioner.

First Department, April 21, 1966.

*John G. Bonomi* of counsel (*Michael Franck* with him on the brief), for petitioner.

*Emanuel Redfield* for respondent.

*Per Curiam.* This is a disciplinary proceeding brought by the Association of the Bar of the City of New York. Respondent was admitted to the Bar on November 4, 1935 in the Appellate Division, First Department. The charges are as follows:

" 1. Respondent, on or about November 25, 1960, engaged in conduct, during the course of the trial of Hulan Jack, which

resulted in his being found guilty of criminal contempt of court on or about December 13, 1960.

" 2. During the course of the trial of *People* v. *Hulan E. Jack*, on or about November 25, 1960, respondent shouted at the court, while the court was in session and in the immediate hearing and presence of the jury, ' I am being coerced and intimidated, the court is suppressing the evidence. '

" 3. Respondent, as a person doing business with the City of New York or interested in City contracts, aided and abetted Hulan E. Jack in violating Sections 886 and 901 of the New York City Charter, and other provisions of law, by making gifts, loans or gratuities, or giving other things of value, to Hulan E. Jack, an official of the City of New York.

" 4. Respondent conspired with Hulan E. Jack to obstruct justice and the administration of the New York City Charter, Sections 886 and 901, in violation of Penal Law, Section 580, and other provisions of law, by concealing certain payments to Fred Bechtel, or others, for work done on Jack's behalf in or about 1958, or for the benefit of Jack. "

The findings of the Referee, George Trosk, Esq., sustaining the charges are amply supported by the record and his excellent and comprehensive report is confirmed.

The record shows the following facts to have been established. During February, March and April, 1958, Hulan E. Jack's apartment at 45 West 110th Street, County of New York, was renovated and redecorated. Jack was President of the Borough of Manhattan and a member of the Board of Estimate of the City of New York. Respondent supplied and paid the contractor, one Bechtel, for the work on Jack's apartment. During this period there was pending before the Board of Estimate the Riverside-Amsterdam project affecting the area in the Borough of Manhattan bounded by West 83rd and West 86th Streets, Amsterdam Avenue and the Hudson River. Respondent and his corporation sponsored the project. Jack has been found guilty of conspiring with the respondent to obstruct justice and the substantive crimes of accepting illegal gratuities by a public official in violation of section 886 of the New York City Charter. (*People* v. *Jack,* 12 N Y 2d 721.)

The arrangements for the work to be done by Bechtel were devious in that the estimate furnished to the respondent, a written direction for extra work authorized by respondent and a purported contract for the work falsely misdescribed the location of the work. The estimate referred to " 55 East 110th Street "; the direction for extras and the contract specified " 158 East 119th Street ". The amount expended for the renovation

and decoration of the Jack apartment was for the year 1958, treated by respondent's corporation as an expense in its income tax return. An amended tax return prepared in February, 1960 eliminated said item as an expense. At this time, however, respondent was aware of the Grand Jury investigation later resulting in the indictment of Jack.

Respondent in December, 1959 attended the office of the District Attorney of New York County. He initially denied making payments for the work done at the Jack apartment and later recanted.

Between December 7 and 11, 1959, the date of respondent's initial appearance at the office of the District Attorney, the respondent, Jack, Bechtel and others formulated the plan to assert that payment for said work had been made by Jack or his wife. This plan followed an investigation commenced by a newspaper reporter; its avowed purpose was to avoid publicity unfavorable to Jack. The plan was in operation when Bechtel was served with a subpœna of the District Attorney and at the time respondent attended the office of the District Attorney.

Prior to December 11, 1959 respondent arranged for meetings with Bechtel, paid him the sum of $200 on account of the balance claimed by him for the work in the Jack apartment and persuaded Bechtel to agree to state that he was paid by Jack and not by respondent and to substantiate it by issuing receipts falsely acknowledging payments from Jack. The scheme aborted when Bechtel under subpœna attended before the District Attorney and informed him he had been paid by the respondent. Respondent was confronted by the District Attorney with the contractor's claim and recanted his prior denial of such payments.

The contempt underlying the second charge against the respondent occurred during the interrogation of the respondent during the second trial of Jack. Respondent was asked: "Q. When you told Mr. Jack that there was now a full scale investigation before the grand jury, what did Mr. Jack tell you?" Respondent first demurred to the question: "Well, that's only a small part of what I told him." Then respondent argued he was unable to state Jack's response because it was part of a half-hour conversation. Respondent asserted he was too upset and nervous and: "I am not being a voluntary witness. I am being pressured and coerced and intimidated into testifying, and I can't testify under these circumstances." Respondent finally said: "I am not going to answer questions, your Honor. I am not going to testify in this confusion, and the Court nor anyone else will make me testify in this emotional state. I am

absolutely unfit to testify because of your Honor's attitude and conduct towards me. I am being coerced and intimidated and badgered. The Court is suppressing the evidence."

The questions addressed to respondent were clearly proper. Defendant Jack did not urge the objections raised by the respondent. He assumed the role of both defendant and attorney.

The record, apart from respondent's declaration, is singularly devoid of evidence of a distraught, disoriented or irrational witness incapable of responsive answers; it establishes a deliberate course of conduct on the part of the respondent obstructive of the orderly and expeditious trial of the indictment against Jack. Respondent's contention that the contemptuous conduct was induced by medication intended to tranquilize but which, in fact, was an antidepressant tending to excite and induce tremors is without substance. This ground was first advanced by respondent four years after the event.

Respondent called as his witness one of the Assistant District Attorneys present during the two Jack trials and the proceedings culminating in the conduct on which the contempt charge is based. He testified concerning respondent's conduct: "I observed you [respondent], and I believe from my observation it was deliberate."

Following the aforesaid testimony, respondent stated: "As a result * * * of [said] testimony * * * I will not call any of the witnesses that I have mentioned, or any of the other public officials whom I have subpoenaed, including the Mayor and Comptroller * * * and so forth."

The learned trial court found, and the record establishes, that the respondent's conduct was an extension of his conduct during the first trial of the Jack indictment during which he persistently ignored rulings, shouted, gesticulated and provoked incidents despite being admonished and cautioned on numerous occasions. Respondent was found guilty of contempt of court by the Judge who presided at the trial. The contempt adjudication followed the criminal trial. (See *Ungar* v. *Sarafite,* 376 U. S. 575.)

A careful examination of the extensive record, exhibits and briefs fails to reveal extenuating circumstances. Respondent's conduct, activities and methods were clearly in violation of the ethical standards required of members of the Bar. (*Matter of Dougherty,* 7 A D 2d 163; *Matter of Lange,* 283 App. Dv. 223.) Moreover, there is no indication of remorse of conscience or contrition.

Respondent's informal applications to reopen the proceedings to further examine Mrs. Safrin, a witness, and to adduce addi-

tional evidence and to reconsider our prior denials of similar relief are denied. Our examination of the record satisfies us that respondent has been afforded and availed himself of ample opportunity to address himself to and meet the relevant issues.

Respondent should be disbarred.

BOTEIN, P. J., RABIN, MCNALLY, EAGER and STEUER, JJ., concur.

Respondent disbarred effective May 23, 1966.